# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                             No. 2:20-cr-00520-WJ-1

DANIEL TORRES,

      Defendant.

## MEMORANDUM OPINION AND ORDER SUSTAINING DEFENDANT'S OBJECTION TO THE PRESENTENCING REPORT

**THIS MATTER** is before the Court following the Defendant's objection to the Presentence Investigation Report (the "PSR"). For the reasons discussed in this Memorandum Opinion and Order, the Court finds pursuant to U.S.S.G. § 2L1.1(b)(6) that the 6 offense levels contemplated in the PSR for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person should not be applied.

## BACKGROUND

On December 5, 2019, the United States filed a complaint charging Defendant with unlawfully transporting and conspiring to transport and move an alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(v)(I). Doc. 1 at 1. On the day Defendant was arrested, he was sitting in the front passenger seat of a 2019 Dodge Durango equipped to seat seven occupants that was driven by the co-defendant when the vehicle entered the Border Patrol Checkpoint near Alamogordo, New Mexico. Doc. 28 at 2-3. During the inspection of the Dodge Durango, the inspector noted three rear passengers and, after questioning these passengers, determined that they were citizens of Mexico. Doc. 1 at 2. The vehicle was consequently referred to a secondary

checkpoint where the fourth and fifth rear passengers were discovered, one hidden on the floorboard of the third-row seat area and one in the vehicle's rear cargo area. *Id*. According to the government, the fourth and fifth rear passengers were unable to wear seatbelts, though it should be noted that the vehicle had two seat belts in the third row of seats. *Id.*; Doc. 28 at 3.

Following Defendant's waiver of preliminary hearing and request for tolling of grand jury presentment, dated December 10, 2019, Defendant pled guilty pursuant to a plea agreement wherein the government agreed to a 2-level reduction for minor involvement under U.S.S.G. § 3B1.2 and another 2-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). PSR at 5. All said, the PSR assessed a total offense level of 14 and a criminal history category of IV, resulting in an advisory sentencing guideline range of 27 to 33 months.[1] PSR at 18.

Defendant now submits that 6 offense levels—the 6 offense levels assigned for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person under § 2L1.1(b)(6)—should not apply, which would result in an assigned advisory guidelines range of 10 to 16 months. Doc 28 at 2.

## DISCUSSION

U.S.S.G. § 2L1.1(b)(6) states that an offense involving the intentional or reckless creation of a substantial risk of death or serious bodily injury to another person will warrant an increase to the corresponding offense level by 2, but if the resulting offense level is less than level 18, such offense will warrant an increase to level 18 (the "Reckless Endangerment Enhancement"). § 2L1.1(b)(6). The commentary to this enhancement states, in relevant part, that the reckless conduct to which the

---

[1] Defendant was assigned a base offense level of 12 under U.S.S.G. § 2L1.1(a)(3), with 6 additional offense levels for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person under U.S.S.G. § 2L1.1(b)(6). PSR at 7. 2 offense levels were deducted for minor participation under U.S.S.G. § 3B1.2 and 2 were deducted for acceptance of responsibility under U.S.S.G. § 3E1.1(a). *Id*. The total offense level stipulated by the PSR was 14. *Id*. The PSR assessed a criminal history score of 8 points and placed Defendant in criminal history category IV. PSR at 10.

adjustment applies includes a wide variety of behavior such as, inter alia, transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous or inhumane condition. U.S.S.G. § 2L1.1, cmt. n.3.

The standard to which the government is bound when attempting to prove the facts supporting a sentencing enhancement is a preponderance of evidence standard, whereby the government must show that the "existence of a fact is more probable than its nonexistence." *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011) ("At sentencing, the government must prove facts supporting a sentencing enhancement by a preponderance of the evidence."); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993); *See also United States v. Cox*, 505 Fed. Appx. 692, 693 (10th Cir. 2012). There is no question here as to whether Defendant was transporting passengers in the trunk or engine compartment of a vehicle; he was not. *See United States v. Dixon*, 201 F.3d 1223, 1233 (9th Cir. 2000) (distinguishing a vehicle's trunk from a hatchback on the grounds that the hatchback provided passengers an opportunity to extricate themselves as needed). Nor was the vehicle carrying more passengers than was allowed by its rated capacity. Doc. 28 at 2. Thus, the only language of the commentary to the Reckless Endangerment Enhancement under § 2L1.1(b)(6) relevant to the issue at hand is "harboring persons in a crowded, dangerous or inhumane condition," § 2L1.1, cmt. n.3, and therefore, given the evidence provided and the posture of the government's argument, for the Reckless Endangerment Enhancement to apply, the government must present evidence sufficient to show that it is more probable than not that Defendant's conduct created such dangerous conditions for the unrestrained passenger hidden in the floorboard of the third row of seats and/or the unrestrained passenger hidden in the cargo area. *See, e.g., Dixon*, 201 F.3d at 1233–34 (vacating sentence because the evidence did not show that the defendant created a substantial risk of death or bodily injury by transporting two illegal aliens in the hatchback of his vehicle where the aliens had oxygen to breathe and an ability to extricate themselves if necessary).

In *United States v. Munoz-Tello*, 531 F.3d 1174 (10th Cir. 2008), the Tenth Circuit affirmed the application of the Reckless Endangerment Enhancement on the grounds that "at least four of [the defendant's] passengers lacked a safety restraint, a situation which the district court rightly regarded as dangerous." *Id*. at 1184. Furthermore, the Court stated that "the danger was even more pronounced for the two passengers who [the defendant] concealed in the *rear cargo area*." *Id*. (emphasis added).

The Tenth Circuit also held in *United States v. Maldonado-Ramires*, 384 F.3d 1228 (10th Cir. 2004) that a defendant's conduct fell well within the ambit of the Reckless Endangerment Enhancement when seatbelts had been removed from a vehicle being used to transport aliens, and cited positively the Ninth Circuit's holding that the Reckless Endangerment Enhancement was appropriately applied where "overcrowding of [the] vans appeared minimal but passengers were not strapped into seats with seatbelts but were instead *lying unrestrained on floorboards* and across the seats." *Id*. at 1231; *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1027-28 (9th Cir. 2000) (emphasis added) (internal quotations omitted).

Importantly, however, the defendant in *Maldonado-Ramires* had physically removed the seatbelts from the vehicle, "was the only driver on a lengthy trip," and *required* that his passengers lay prone on the floor of the vehicle. *Maldonado-Ramires*, 384 F.3d at 1231. Furthermore, it is worth noting that the Ninth Circuit in *Hernandez-Guardado* reviewed the enhancement for abuse of discretion by the district court as to the application rather than the enhancement's application directly, and stated that "reasonable minds could differ as to the severity of the overcrowding in the vans and the resulting degree of risk." *Hernandez-Guardado*, 228 F.3d at 1028. It is sensible that, in this context, reasonable minds can likewise differ as to the severity of the risks associated with transporting aliens unrestrained or in a vehicle's floorboard or cargo area. Such can be seen in the approach taken by the Fifth Circuit, finding often the application of the Reckless Endangerment Enhancement to be inappropriate where a defendant transported passengers without seatbelts and the defendant's aggregate behavior was less dangerous than that of the defendant in *Maldonado-Ramires*. *See, e.g.,*

4

*United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005) ("The § 2L1.1(b)([6]²) enhancement as written, one would think, does not extend so far as to increase punishment for offenders simply for transporting illegal aliens without requiring them to wear seatbelts.").

Since *Solis-Garcia*, the Fifth Circuit has held fast to this departure from *Hernandez-Guardado* while incorporating into its review of the application of the Reckless Endangerment Enhancement a list of factors to guide the analysis of whether certain conduct subjects harbored aliens to crowded, dangerous or inhumane conditions. *See United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010). While not intended to be exhaustive, this list includes "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs," a lack of which, in each case, may constitute reckless endangerment. *See Id*. (quoting *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006)). Under this rubric, the Fifth Circuit has consistently held that a passenger's lack of a seatbelt or restraining device is not dispositive of reckless endangerment, and that transporting aliens unrestrained in a part of the vehicle not intended for passenger seating is not reckless endangerment *per se*. *United States v. Torres*, 601 F.3d 303, n.1 (5th Cir. 2010) (the lack of a seatbelt alone will not satisfy the language of § 2L1.1(b)(6)); *See Zuniga-Amezquita*, 468 F.3d at 890; *Torres*, 601 F.3d at 305. In fact, in event an alien is being transported unsecured in an ostensibly dangerous area of the vehicle, such alien's positioning must be *more* dangerous than it would have been had the alien simply been traveling without a seatbelt. *Zuniga-Amezquita*, 468 F.3d at 890 ("The application of § 2L1.1(b)([6]) is warranted if a method of transportation exposes aliens to a substantial risk, in the event of an accident, of death or serious bodily injury . . . [provided that the] risk must, however, be greater than that of an ordinary passenger not wearing a seatbelt in a moving vehicle."); *See Torres,* 601 F.3d at 306 (vacating an application of the Reckless Endangerment Enhancement because it was

---

² While *Solis-Garcia* cites to U.S.S.G. § 2L1.1(b)(*5*), the correct citation to this language in the 2004 Sentencing Commission Guidelines Manual, it is in reference to the updated citation § 2L1.1(b)(*6*).

not more dangerous for a child to be transported beneath the sleeping area of a tractor trailer than it would have been for the child to travel without a seatbelt).

The question presented here, then, is whether the passengers discovered in the floorboard of the third row of seats and in the cargo area of the Durango were transported in a "crowded, dangerous, or inhumane condition." § 2L1.1, cmt. n.3. The Tenth Circuit has not provided extensive guidance as to what constitutes a "crowded, dangerous, or inhumane condition" absent cases in which substantial overcrowding was observed. *See, e.g., United States v. Cardena–Garcia*, 362 F.3d 663, 664 (10th Cir. 2004) (seventeen aliens transported in a van meant only to hold seven passengers); *United States v. Jose–Gonzalez*, 291 F.3d 697, 699 (10th Cir. 2002) (sixteen aliens transported on the floor of a van where the rear seats and seatbelts had been removed). In fact, *Maldonado-Ramires* is the only Tenth Circuit authority significantly similar to the case at hand, and while substantial overcrowding was not observed, the relevant passengers in *Maldonado-Ramires* were subjected to considerably more risk than those in question here. *See Maldonado-Ramires*, 384 F.3d. Namely, they were transported in a minivan from which the rear seatbelts and the seats themselves were physically removed, they were ordered to lay in the floor by the defendant-driver, the defendant-driver was the only driver on a lengthy trip from Arizona to Florida, and ultimately, several such passengers were injured and one was killed when the vehicle was involved in an accident. *See Id.* Accordingly, this Court finds that the enhancement in *Maldonado-Ramires* was based on far more dangerous conduct than the instant case, and turns elsewhere for guidance as to the application of the Reckless Endangerment Enhancement. *See United States v. Valdivia-Alvarado*, 2007 WL 2287837, 2 (D. Kan. 2007) (distinguishing the case from Tenth Circuit precedent due to a lack of the aggravating factors contemplated in *Maldonado-Ramires*, and instead deferring to Fifth Circuit authority).

The Fifth Circuit has seen cases involving a broad spectrum of defendant trafficking conduct, broad enough to clarify the circumstances in which the Reckless Endangerment Enhancement does

and does not apply to the kind of conduct at issue here. *Zuniga-Amezquita*, while not controlling, is particularly persuasive authority, as this Court believes that the *Zuniga-Amezquita* test is probative as to the meaning of "crowded, dangerous, or inhumane condition[s]" where the Tenth Circuit has not yet clarified the point. Thus, this Court incorporates into its analysis what it believes to be the sensible factors set forth therein. To reiterate, these factors are (1) the availability of oxygen, (2) exposure to temperature extremes, (3) the aliens' ability to communicate with the driver of the vehicle, (4) the aliens' ability to exit the vehicle quickly, and (5) the danger to the aliens if an accident occurs. *Zuniga-Amezquita*, 468 F.3d at 889. With respect to the first and second factors, this Court has no reason to believe that any of the passengers in the Durango were subjected to reduced airflow or temperature extremes, and with respect to the third factor, the Court is confident that the passengers were able to communicate with the driver, as needed, because no passenger was  confined in separate or closed-off areas of the vehicle. Doc. 28 at 2-3. With respect to the fourth factor, this Court is similarly unconvinced that the passengers, namely the passenger hidden in the floorboard of the third row of seats and the passenger hidden in the cargo area, were unable to extricate themselves from the vehicle. In the case of the first such passenger, it appears clear that he was no more restricted from exiting the vehicle than someone properly restrained in the seat of the third row. In the case of the second such passenger, it is less clear, as evidence has not been presented as to whether the vehicle's cargo area can be opened from the interior. However, courts have found that aliens being transported in a vehicle's hatchback, an interior cargo area similar to the cargo area of the 2019 Durango, were not restricted in their ability to extricate themselves, and it is conceivable that in event of an emergency, a passenger stowed in any such cargo area has the option to climb over or fold the seats to access the rear doors. *See Dixon*, 201 F.3d at 1233–34.

Remaining of the *Zuniga-Amezquita* factors, however, is the fifth, the danger to a passenger in event an accident was to occur. *See Zuniga-Amezquita*, 468 F.3d at 889. The government contends that

the passengers' positioning would have "extreme" and "appalling" results were the vehicle to have been involved in a traffic accident, and that "neither of the two aliens in these positions had access to a seatbelt." Doc. 32 at 4. It is true that traveling unrestrained in the floorboard or cargo area is more dangerous to a passenger than traveling while properly restrained in a seat, but it is difficult to know with any certainty that riding unrestrained in a floorboard or cargo area is more dangerous than simply riding in a seat without a seatbelt when a vehicle is moving at the presumably slow rate in which it would be moving from one inspection lane to another at a Border Patrol checkpoint, and the government has offered no evidence suggesting that the aliens were transported in the floorboard and cargo area other than from the first inspection lane of the checkpoint (and perhaps approaching it) to the second inspection lane of the same checkpoint. Nor has the government proffered evidence undermining the reasonable assumption that these aliens may have been properly seated in the third row of seats, and upon entering the Border Patrol checkpoint, decided with no instruction by the Defendant to hide in the floorboard and rear cargo area.

This Court agrees with the Fifth Circuit that an alien's positioning in a vehicle *must* be more dangerous than it would have been had the alien simply been traveling without a seatbelt for the Reckless Endangerment Enhancement to apply, but how much more? *Zuniga-Amezquita*, 468 F.3d at 890. Both the Tenth Circuit and *Zuniga-Amezquita* are unclear as to the degree in which an alien's positioning in a vehicle must be more dangerous than it would be were said alien simply traveling without a seatbelt, and the government has offered no evidence to suggest a difference at all, much less evidence establishing which position is more dangerous than the other, at ordinary speeds or otherwise.

Because there is little by way of evidence to distinguish traveling in the floorboard or cargo area of a vehicle from merely traveling without a seatbelt, this Court turns again to the Fifth Circuit, which has established decidedly that "the mere fact that an alien is transported in a portion of the [vehicle] that is not designed to hold passengers is not, *without more*, sufficient to support the

enhancement." *Mata*, 624 F.3d at 174 (emphasis added); *See, e.g., Solis-Garcia*, 420 F.3d at 516 ("We do not believe the act of transporting four aliens lying in the cargo area of a minivan, *with no aggravating factors*, constitutes an inherently dangerous practice such as to create a substantial risk of death or serious bodily injury to those aliens.") (emphasis added); *United States v. Rodriguez*, 630 F.3d 377, 381 (5th Cir. 2011) (three aliens discovered in the cargo area of a Ford Explorer could not sustain the Reckless Endangerment Enhancement.); *Torres*, 601 F.3d at 305 (transporting aliens unrestrained in a part of the vehicle not otherwise intended for travel is not reckless endangerment *per se*). Nothing in the facts implies that that there are other "aggravating factors," such as those present in applicable Tenth Circuit cases, to be considered, other than that one passenger was on the floorboard of the third row of seats and one passenger was hidden in the cargo area. *See Solis-Garcia*, 420 F.3d at 516. Had the government presented evidence to the contrary, perhaps demonstrating that the vehicle carried more passengers than it was equipped to carry or travelled at excessive speeds which may have exacerbated the risks associated with unrestrained or improperly positioned passengers, the Defendant's conduct may have been shown to include aggravating factors severe enough to warrant the enhancement, but the facts, as they stand, do not suffice to do this. *See Mata*, 624 F.3d at 174; *See also Solis-Garcia*, 420 F.3d at 516.  As such, this Court finds that Defendant was not transporting passengers in a "crowded, dangerous or inhumane condition," and thus that the Reckless Endangerment Enhancement should not be applied. *See* § 2L1.1, cmt. n.3

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the Court finds and concludes pursuant to U.S.S.G. § 2L1.1(b)(6) that the government has failed to establish by a preponderance of the evidence that the Reckless Endangerment Enhancement should be applied, and Defendant's Objection to the Presentence Investigation Report is **SUSTAINED**. Accordingly, Defendant's guideline offense level is 8 and his criminal history category is IV, resulting in an advisory

guideline sentencing range of 10 to 16 months incarceration.


**IT IS SO ORDERED**.


_____
**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**